UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CR-00480 RWS |
| | ) | |
| WENDE ANNE TERRILL, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S TRIAL BRIEF AND**
**MOTION FOR PRETRIAL ADMISSIBILITY OF EVIDENCE**

COMES NOW, the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Lindsay McClure-Hartman and Gwendolyn Carroll, Assistant United States Attorneys for said District, and submits the following trial brief.

**I.    Procedural History**

On October 18, 2017, a Federal Grand Jury returned a one-count indictment against the defendant, Wende Anne Terrill, charging one count of Wire Fraud in violation of Title 18, United States Code, Section 1343. (Doc. 2. at 1). On January 11, 2018, the defendant filed a Motion to Suppress evidence seized pursuant to the search of defendant's vehicle on May 12, 2017. (Doc. 27). On January 19, 2018, the government filed a Response in Opposition to defendant's Motion to Suppress Evidence. (Doc. 31). United States Magistrate Judge Nannette Baker held an evidentiary hearing on the motions on March 2, 2018. (Doc. 35). During the hearing, Judge Baker granted the defendant's request to file a post-hearing brief in support of her Motion to Suppress,

1

and granted the government an opportunity to respond. (Doc. 44). After the hearing, the government filed a Motion for Supplemental Hearing for argument on those briefs and to present additional evidence, which was unopposed by the defendant. (Doc. 39). The supplemental hearing was held on March 28, 2018. (Doc. 41).

On June 21, 2018, Judge Baker issued an extensive Report and Recommendation denying defendant's Motion to Suppress evidence. (Doc. 50). Defendant filed an Objection to the Report and Recommendation on July 2, 2018 (Doc. 52), and the government filed a Response on July 10, 2018 (Doc. 53). The determination of the Magistrate Judge was affirmed by this Honorable Court on September 4, 2018. (Doc. 58). After several continuances, this case was ultimately set for trial on March 4, 2019. (Doc. 70).

## II.   <u>Overview of the Facts</u>

The government anticipates the evidence at trial will establish the following:

Midwest Petroleum (hereinafter "MWP") is a company located in St. Louis, Missouri that operates over 50 gasoline and convenience food stores in addition to distributing convenience store products.   MWP is owned and operated by Don and James McNutt. Defendant Wende Anne Terrill was hired as a Staff Accountant for MWP in May 2007, eventually being promoted to the position of Controller in 2014. As Controller, Terrill had access to and control over MWP's accounting system and bank accounts. She reported to the Vice President of Finance, Jeff Ziegler. Among defendant's direct reports was Stacy McCubbin, a Senior Accountant for MWP.   As a part of its business operations, MWP deals with several vendors.   To pay those vendors, MWP sends checks or wire transfers from the company bank account at U.S. Bank to the vendor bank account.   Wire transfer payments were made to vendors using U.S. Bank's online banking system.

To provide oversight for the wire transfer process, MWP policy required that two employees be involved in every wire transfer.   Specifically, one employee initiated the transfer under his or her unique login credentials and a second employee was required to approve the transfer under his or her unique login credentials. Defendant Terrill and Jeff Ziegler typically processed wire transfers together—with the defendant initiating the transfer and Ziegler approving.

On February 28, 2017, while Ziegler was out of the office, defendant Terrill asked Stacey McCubbin to assist her with a wire transfer.   Defendant Terrill told McCubbin that she wanted to teach her how to initiate a wire transfer.   Terrill then told McCubbin what information to enter on the U.S. Bank website to create a wire transfer to "Planet Logistics" for $37,800.00.   McCubbin noticed that defendant Terrill was using information from hand-written notes rather than an invoice, which struck her as out of the ordinary.   Defendant Terrill never provided an invoice to McCubbin for the $37,800 wire transfer.   Jeff Ziegler returned to the office on March 1, 2017, and became aware of the $37,800.00 wire transfer initiated and approved while he was out of the office.   Knowing that he never approved such a wire transfer, Ziegler questioned Terrill about the wire transfer.   Terrill initially claimed she misplaced the Planet Logistics invoice, but eventually produced an invoice to show Ziegler.   After discussing the invoice with Terrill, Ziegler attempted to find the invoice again, but was unable to locate any invoice or documentation showing MWP ever ordered equipment or materials from an organization named Planet Logistics.

On March 8, 2017, defendant Terrill submitted her resignation to MWP stating her last day with MWP would be March 31, 2017.   Terrill's stated reason for departure was to run the accounting department of another business.   Upon her departure, Ziegler requested access to Terrill's email account to ensure that no customer emails went unaddressed during the transition

3

period to a new controller.   On April 19, 2017, while reviewing Terrill's emails, Ziegler became concerned that Terrill had made multiple unauthorized withdrawals from MWP's business account at U.S. Bank.   On April 20, 2017, Ziegler scheduled a meeting with Terrill to discuss his concerns. During the meeting, Ziegler questioned defendant Terrill about the unauthorized wire transfer. Without equivocation or explanation, defendant Terrill said that she would pay the $37,800 back to the company with interest.   To that end, defendant Terrill provided Ziegler with a handwritten promissory note.   Defendant Terrill never repaid the money to MWP.   The wire transfer to Planet Logistics was sent from MWP's U.S Bank account in St. Louis, Missouri to a Bank of America account in New York, New York, thereby causing an interstate wire transmission.

An audit of the accounting system and a review of MWP's invoices revealed that MWP has never ordered from a vendor named Planet Logistics, and that no employee of MWP approved defendant Terrill's wire to Planet Logistics.   After discovering the fraudulent wire transfer, Ziegler and the accounting staff reviewed MWP's accounting system and found five suspicious checks attributable to defendant Terrill that predated the fraudulent wire transfer.   Ziegler contacted U.S. Bank, which provided him a report of each of the checks issued.

**Check One:**

On January 27, 2017, defendant Terrill issued Check Number 0041845 for $30,000 from the MWP bank account and made it payable to U.S. Bank.   Defendant Terrill presented that check in-person at U.S. Bank's Richmond Heights' branch at approximately 12:15PM using it to purchase a U.S. Bank cashier's check, Number 8398512564, in the amount of $30,000 payable to "Menang Steel".   Terrill returned to the bank later that day and told the teller supervisor, Kristine Williamson, that she had identified the wrong payee on the cashier's check, and needed a new

4

cashier's check to be issued.    The bank subsequently issued cashier's check, Number 8398512565, in the amount of $30,000 payable to "BHB Trading".   Neither Menang Steel nor BHB Trading are vendors of MWP.

**Check Two:**

On February 3, 2017, Defendant Terrill manually entered an invoice to Site Oil Company for $76,950 into the MWP accounting system.   Site Oil Company is a legitimate vendor to MWP. Defendant Terrill then created Check Number 0041994 for $76,950 in the Accounts Payable system related to that invoice.   However, instead of listing Site Oil Company as the payee on the check, she altered the check and entered U.S. Bank as the payee instead.   Defendant Terrill then took Check Number 0041994 in person to U.S. Bank at approximately 12:06pm and obtained a $76,950 cashier's check to "BHB Trading Co." At approximately 1:26 pm the same day, defendant Terrill returned to the bank and said that she had again listed the wrong payee – she purchased a new cashier's check, Number 8398512602, in the amount of $76,950 payable to "JBC Distributors Inc."   On approximately February 6, 2017, the cashier's check payable to JBC Distributors Inc. was negotiated, and the funds were withdrawn from MWP's account.   Neither BHB Trading Co. nor JBC Distributors Inc. are vendors of MWP, and MWP never received any goods or services from JBC Distributors.

**Check Three:**

On February 14, 2017, defendant Terrill issued a MWP check for $20,000 made payable to "Nathaniel Robinson". Defendant Terrill entered the check into MWP's accounting system as payable to "Nova Group"—a legitimate MWP vendor.   On approximately February 14, 2017, the cashier's check payable to Nathaniel Robinson was negotiated, and the funds were withdrawn from

MWP's account.  MWP does not order equipment or services from an organization or person named Nathaniel Robinson.

**Check Four:**

On February 16, 2017, defendant Terrill issued a MWP check for $20,000 payable to U.S. Bank. In the MWP accounting system, defendant Terrill again wrote that the check was payable to Nova Group.   At the U.S Bank Richmond Heights' branch, Terrill requested the cashier's check be made payable to "Kind Heart Inc."   MWP has never had any business relationship with Kind Heart Inc., and never received goods or services from an entity by that name.

**Check Five:**

On February 22, 2017, defendant Terrill issued a MWP check in the amount of $22,500 drawn on the MWP U.S. Bank account and made payable to U.S. Bank.  She again noted the check in the MWP accounting system as payable to Nova Group.  Defendant Terrill took the check to U.S. Bank where she purchased a $22,500 cashier's check made payable to "Goldia Enyinnia".  MWP does not order equipment or services from an organization or person named Goldia Enyinnia.

All of the above-described transactions conducted by defendant Terrill at U.S. Bank were captured via video surveillance. In total, defendant Terrill embezzled $207,250 from the MWP U.S. Bank account.

**III.    Legal Issues**

A.    <u>Elements of the Offense of Wire Fraud</u>

Count One of the indictment charges the defendant with Wire Fraud in violation of Title 18, United States Code, Section 1343.   The essential elements of a violation of Title 18, United

States Code, Section 1343 are:

One, the defendant voluntarily and intentionally devised and intended to devise a scheme and artifice to defraud MWP out of money and property by means of material false and fraudulent pretenses, representations and promises which scheme is described as follows: defendant misappropriated funds from MWP by issuing unauthorized checks and causing an unauthorized wire transfer of funds from MWP's operating account.

Two, the defendant did so with the intent to defraud; and

Three, the defendant used, or caused to be used, an interstate wire communication, that is, a wire transfer of funds, in furtherance of, or in attempt to carry out, some essential step in the scheme.

The requisite intent to defraud so as to support a conviction for wire fraud exists if defendant acts knowingly and with specific intent to deceive, ordinarily for purpose of causing some financial loss to another or bringing some financial gain to herself.  *U.S. v. Keller*, 14 F.3d 1051, 1056 (5th Cir. 1994) (determining proof of intent to defraud may arise by inference from all of the facts and circumstances surrounding transactions).   The Eighth Circuit has repeatedly concluded that evidence of fraudulent intent may be established by circumstantial evidence.  *See United States v. Ervasti*, 201 F.3d 1029, 1037 (8th Cir.2000) ("Absent an outright admission of intent to defraud, the requisite intent can be shown by circumstantial evidence.")   "The cases are legion that intent may properly be inferred from all the facts and circumstances surrounding the transactions."  *United States v. Porter*, 441 F.2d 1204, 1210 (8th Cir. 1971).   In the instant case, the government will show that defendant knowingly and intentionally defrauded MWP by misrepresenting that the checks and wire transfer went to vendors of MWP.

B.     Federal Jurisdiction

Interstate wire communications were used to further the fraudulent scheme, and federal jurisdiction attaches, if the use of the wires by the bank were incident to an essential part of the scheme.  *Pereira v. United States*, 347 U.S. 1, 8 (1954). The Government will demonstrate that defendant Terrill caused a $37,800 wire transfer from MWP's U.S. Bank business account in St. Louis, Missouri to "Planet Logistics" bank account at Bank of America in New York, New York. This use of the wires was essential to defendant Terrill's scheme to defraud MWP.

IV.    **Evidentiary Issues**

A.     U.S. Bank Surveillance Images

In the normal course of its business operations, U.S. Bank, specifically the Richmond Heights branch, keeps and maintains surveillance images of the bank premises, including the teller windows.   Kristine Williamson, the teller coordinator at U.S. Bank, will testify that the bank surveillance images are kept in the regular course of U.S. Bank's business operations. Williamson will lay the foundation for the surveillance images as she is familiar with the bank premises and employees and has reviewed the surveillance images.  *See U.S. v. Muhammad*, 512 Fed. Appx. 154, 161 (3rd Cir. 2012).   U.S. Bank maintained video surveillance on January 27, February 3, February 14, February 16, and February 22, 2017.   The video surveillance images on those dates depict defendant Terrill entering the bank and completing transactions at the teller window.   In order to be admissible, a photograph must only be shown to be an accurate representation of the thing depicted as it appeared at the relevant time.  *Schmidt v. City of Bella Villa*, 557 F.3d 564, 569 (8th Cir. 2009).   The video surveillance images themselves contain a date and time stamp indicating the exact moment at which each image was captured.   Williamson

will further testify that the date of each surveillance image corresponds to the date on the cashier's checks requested by defendant Terrill.

B.    <u>Defendant Terrill's Promissory Note</u>

Under Federal Rule of Evidence 901(a), a document must be authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims. Furthermore, the contents of the document may be considered in establishing authenticity. *See* Fed. R. Evid. 901(b)(4); *see also U.S. v. Wilson*, 532 F.2d 641, 645 (8th Cir. 1976)("It is well settled that genuineness of a writing can be established by circumstantial proof without resort to the handwriting or typewriting. Where the writings are such that only those persons acquainted with the particular transactions involved could have written them, the authenticity of the evidence is considered reliable.")   April 20, 2017, Jeff Ziegler met with defendant Terrill to discuss the February 28, 2017 wire transfer that went to "Planet Logistics" which defendant Terrill approved while Ziegler was out of town.   At that meeting, defendant Terrill drafted and signed a handwritten promissory note agreeing to "make reimbursement to Midwest Petroleum for the 37,800 plus interest."   In addition to defendant Terrill writing the note in the presence of Jeff Ziegler, it is also a writing that only she could have written given her involvement in and knowledge of the wire transfer.   Furthermore, the written statement is admissible pursuant to Federal Rule of Evidence 801(d)(2)(A) as the statement of a party opponent.

C.    <u>Defendant Terrill's Compensation Structure</u>

Relevant evidence is admissible under Federal Rule of Evidence 401, so long as the relevance of the evidence is not substantially outweighed by unfair prejudicial effect.   *See* Fed. R. Evid. 401, 403; *see also United States v. Hall*, 604 F.3d 539, 544 n. 8 (8th Cir. 2010) (citing *United*

*States v. Sudeen,* 434 F.3d 384, 389 (5th Cir. 2005).   Intrinsic evidence is that which "relate[s] to an integral part of the immediate context of the crime charged." *United States v. LeCompte*, 108 F.3d 948, 952 (8th Cir. 1997) (citing *United States v. Waloke*, 962 F.2d 824, 828 (8th Cir. 1992)); *United States v. Bass*, 794 F.2d 1305, 1312 (8th Cir.) cert. denied, 479 U.S. 869 (1986).

FBI Special Agent Eric Mills interviewed defendant Terrill on July 19, 2017.   During that interview, defendant Terrill indicated she felt her failure to repay the $37,800 to MWP was justified by her poor compensation by MWP.   Terrill indicated to SA Mills that rather than repaying the stolen funds, she intended to sue MWP for employment discrimination, and indicated she felt she was owed at least $100,000 in back-pay and bonuses by MWP.   The government intends to elicit brief and limited testimony from MWP's Vice President of Finance, Jeff Ziegler, refuting the factual accuracy of Terrill's statements.   Ziegler will testify that Terrill was promoted to Controller in 2014 after being hired as Senior Accountant in 2007, and that her promotion enabled her to earn management bonuses.   He will further testify that at least as early as 2013, defendant Terrill received a raise every single year.   At the time she resigned from the company, Terrill's compensation was $99,799.10 annually.   Defendant Terrill's compensation structure is relevant and demonstrates that rather than being owed money by MWP, defendant Terrill was well-compensated, promoted, and given the opportunity to share in the company's profits.

D.   Summary and Demonstrative Exhibits

The Government intends to use a summary chart outlining the six financial transactions describe *supra*.   The summary chart will be used to summarize business records, specifically U.S. Bank records.   It has long been the rule that charts of the sort involved here may be exhibited to the jury during the trial in the discretion of the trial court in order that they "may guide and assist

the jury in understanding and judging the factual controversy." *United States v. Downen*, 496

F.2d 314, 321 (10th Cir. 1974).[1]   The Eighth Circuit, in *United States v. Smallwood*, 443 F.2d 535

(8th Cir.), cert. denied, 404 U.S. 853 (1971), allowed the admission of charts that summarized

other exhibits.   The court stated, as follows:

> The courtroom use of summaries of business records, particularly where the actual
> records are voluminous and complex, is not only proper but advisable.   (Citations
> omitted)   Evidential use of such summaries rests within the sound discretion of the
> trial judge, whose action in allowing their use may not be disturbed by the appellate
> court except for an abuse of discretion.   *Id.* at 540; *see also King*, 616 F.2d at 1034.

In *Smallwood*, the summaries in issue were based on materials already in evidence or that

were being admitted.   The same will be true here.   Any alleged inaccuracies in the summaries

go, according to *Smallwood*, to the weight to be accorded the summaries, not to their admissibility.

*See e.g*., Devitt & Blackmar, Federal Jury Practice and Instructions (Third Edition) Section 15.23.

In *Smallwood*, the court cited with favor a prior Eighth Circuit case which reasoned, "[e]xhibits

which may facilitate understanding of complex factual issues are to be encouraged for court room

use." *Boston Securities, Inc. v. United Bonding Insurance Co*., 441 F.2d 1302, 1303 (8th Cir.

1971).   *See also, United States v. Brickey*, 426 F.2d 680, 686-87 (8th Cir.), cert. denied, 400 U.S.

828 (1970); *Ping v. United States*, 407 F.2d 157, 159-160 (8th Cir. 1969) (summaries of checking

---

[1]     *See also United States v. Johnson*, 319 U.S. 503, 519 (1942); *United States v. Orlowski,* 808 F.2d 1283, 1289 (8th Cir. 1986); *United States v. Nelson*, 735 F.2d 1070, 1072 (8th Cir. 1984); *United States v. Katz*, 705 F.2d 1237 (10th Cir. 1983); *United States v. Behrens*, 689 F.2d 14 (10th Cir.), cert. denied, 103 S. Ct. 573 (1982); *United States v. King*, 616 F.2d 1034, 1041 (8th Cir.), cert. denied, 446 U.S. 969 (1980); *United States v. Skalicky*, 615 F.2d 1117, 1120-21 (5th Cir.), cert. denied, 449 U.S. 832 (1980); *United States v. Foshee*, 606 F.2d 111, 113 (5th Cir. 1979), cert. denied, 444 U.S. 1082 (1980); *United States v. Scales*, 594 F.2d 558, 561-64 (6th Cir.), cert. denied, 441 U.S. 946 (1979); *United States v. Normile*, 587 F.2d 784, 787 (5th Cir. 1979); *United States v. Ellenbogen*, 365 F.2d 982, 988 (2d Cir. 1966), cert. denied, 386 U.S. 923 (1967).   *See*, generally, Fed. R. Evid.1006.

accounts records in criminal tax case).

Thus, it is clearly within the discretion of the trial court to allow the use of charts at trial where they would be of assistance to the jury, subject to the appropriate limiting instructions. *Smallwood*, 443 F.2d at 540.   Such discretion will be subject to review only upon a clear showing of abuse and resulting prejudice to the opposing party.   *Brickey*, 426 F.2d at 686-87; *King*, 616 F.2d at 1034.

The use of charts in the opening statement and closing argument is governed by the same principles that apply to the use of charts at trial.   *See United States v. Churchill*, 483 F.2d 168 (1st Cir. 1973); *United States v. Rubino*, 431 F.2d 284 (6th Cir. 1970).   As described above, the charts will help the jury picture the structure of the transactions at issue and the relationships of witnesses and entities involved, thereby effectuating the recognized goal of an opening statement – "to give the broad outlines of the case to enable the jury to comprehend it," *Virgin Islands v. Turner*, 409 F.2d 102, 103 (3d Cir. 1969), and "to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole."   *United States v. Dinitz*, 424 U.S. 600 (1976) (Burger, C.J., concurring).

Respectfully submitted,
JEFFREY B. JENSEN.
United States Attorney


  */s/ Lindsay McClure-Hartman*
GWENDOLYN CARROLL, NY 4657003
LINDSAY MCCLURE-HARTMAN, MO 66070
Assistant United States Attorney
111 S. 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2019, the foregoing was filed electronically with the

12

Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Lindsay McClure-Hartman
Assistant United States Attorney